Good morning, your honors. May it please the court, my name is James Ridgway and I represent the appellants in this matter. Before I roadmap the three pivotal errors made by the Veterans Court in this case, I want to initially state what this case is not about. This case is not about whether Mr. Bowling's character of discharge should be excused. This case is not about whether Mr. Appling has met the low threshold to trigger the duty to assist in developing evidence that might lead to his character of discharge being excused. This case is about whether the Constitution permits those questions to be governed by an implementing regulation that has no meaning to ordinary lay people, no technical medical meaning, no technical legal meaning, and results in inconsistent outcomes among ROs and among board judges. Is it right to translate what you just said into the proposition that you have not made an argument for vagueness as applied to your two clients? That is correct. This is a facial challenge, not an as applied challenge. But that is appropriate here because this is an interpretive regulation and not an authorizing statute. If you strike this regulation down, it does not change who is eligible for benefits and who is not eligible. Can I ask this question? I thought it remains good law even after the Supreme Court's Johnson case and the Armed Career Criminal Act case, which throws a little bit of this into uncertainty. But I thought it remains clear that a person to whom a law is clearly applicable, which is to say it's not vague as applied, cannot bring a facial vagueness challenge. I'm thinking of the Expression View case, the Supreme Court 2017, which came after Johnson, which I think said that in so many terms. Why does that not preclude your facial challenge here? Because that is an application of the prudential concern under Washington State Grange that says in certain situations we will not look to the constitutional claim because there are prudential reasons why there could be problems here. And so Washington State Grange says that prudentially you shouldn't do this if it's premature, if the person is asking for a rule that is broader than necessary, and this is I think what applies in the criminal authorizing statutes. When you declare a criminal authorizing statute void for vagueness, you're frustrating the intent of the elected representatives of the people and throwing out the baby with the bathwater. Here, as I emphasize, the intent of Congress as expressed in the history of the GI Bill is that the question of insanity ranges all the way from mere eccentricity to the behavior of a raging maniac. As the Veterans Committee chairman explained, this means a man who is insane to such an extent that he is not responsible. That is the authorizing language, and if you strike down the interpretive regulation, that remains untouched. But VA would then have to focus on what Congress intended, which was responsibility, rather than this 90-word soup of terms that do not provide notice to an ordinary layperson of what is meant, that do not have a technical medical meaning such that when you ask an expert for an opinion, they can give you something that is relevant beyond the question of does this person have a diagnosed condition. Your mention of the ordinary layperson, I guess, prompts me to ask this question. Ordinarily, the concern or a concern about vagueness is a concern about notice at the time of the conduct. I think you rightly have not made an argument along those lines here because we're not talking about the decision to engage in barroom fights or something, according to whether you're feeling insane that day or something. Yes. You're talking about the uncertainty about what kind of evidence to submit. That would ordinarily not be a layperson's decision, would it? Well, not just the type of evidence, but what the ultimate thing that needs to be proven. The first thing I would say is there's a difference in terms of how you look at the notice question when it comes to the government on the offensive trying to prosecute a person for behavior that they may or may not have noticed was prohibited. Here, you're looking at the citizen who's coming to the government and saying, I have a property right. I'm entitled to benefits under the statute, and I don't understand how to prove that. And so I think what we look at is I like the formulation in Graynard v. City of Rockford. A law is impermissibly vague where it delegates basic policy matters to frontline officials for resolution on an ad hoc subjective basis. And if an ordinary person can't tell what to submit, and when the outcomes indicate that the results are ad hoc and subjective depending on whether you apply in Indianapolis or Ohio or which state or which judge you get, and you have a chance of getting someone, an adjudicator who has a perfect record of always denying this, or an adjudicator who 45 percent of the time finds character of discharge to be excused, then there's a concern. And I think actually one of the best cases to look at the line is the one that the government relies upon for the proposition that vagueness at the margins is okay. And the cases in which the agency has found that the individual claiming to be insane was insane, what kind of evidence was put in in those cases? Well, we don't have a window into the evidence. No, but we do know that there are instances in which veterans who had bad paper discharges sought to establish insanity and they succeeded. Yes. And they did so in an adjudicating forum, although user-friendly at least at the RO and BVA level. So your argument that one wouldn't know what type of evidence to supply seems, as a practical matter to me, to be belied by the fact that it has been done. Well, it's been done because the adjudicators have broad discretion to decide what the policy is when it's ad hoc and subjective. If we had examples, you'd be able to point out why the evidence that was submitted was left to serendipity to the decision maker. So I think that there are several things that you can look at. So first of all, you can look at what Adams and Montalto found in their study of board decisions, which is what actually happens is they apply a criminal insanity standard. And when you look at the hearing in Mr. Appling's case, what was the question that the board judge asked Mr. Appling? I just was curious. I mean, if you say one of the tests is whether there's more or less prolonged deviation from normal method of behavior, presumably one can establish one's normal method of behavior through evidence. Clearly, I mean, you can record one's behavior. And then I suppose you could, against the marker of the normal behavior, mark what you consider to be deviation therefrom and examples of it. For example, if I ordinarily wear my clothes and a tie when I come on the bench, that's normal behavior. If I appeared with no tie or no robe, that would be a deviation, would it not? Yes. And that would be easy matter to establish that by evidence. And in some cases are easy. Just your broad statement that this particular regulation should fall because no one knows what type of evidence or no one knows what to bring to bear to get a decision seemed to me not to be correct. So I think this is why national dairy products really makes clear where the line is. This is, again, the case relied upon by the government. And we agree vagueness at the margins is fine. In national dairy products, the issue is whether a business was selling at a loss for the purposes of undercutting competition. And the Supreme Court said that that is not vague. Different accounting standards can lead to some uncertainty as to what it means to be at a loss. But it's not like the case they contrasted it to, which was Cohen Grocery, where the language of the law prohibited unjust or unreasonable rates or charges. And the court said in national dairy, the Supreme Court said that's too vague because it is without a meaningful reference in the business practice or usage. So if a technical term has a meaningful reference in business practice or usage, if it were such that mental health standards had a – professionals could tell you there is a standard for deciding what is the normal method of behavior and what is a deviation, then that would be okay because it would have a technical meaning. But when we look to the Garbleman article, what we see is a VA examiner who says there is no VA training, and I don't understand what this means because it's a cumbersome regulation. And so what does he do to try and develop a meaning? Does he go to the DSM or other psychiatric sources? No. He reads 30 board decisions to try and understand what the regulation means. But the mental health experts should not be giving you their opinions on a technical legal standard. They should be giving you technical mental health opinions, which they can do on the question of diagnosis, but not on these other terms that are in there that have no foundation in the DSM. A regulation key to negligence would be unconstitutionally vague? Absolutely not. That is a standard that has a developed legal meaning. It is not precise. It may be vague at the margins, but— Well, the regulation itself refers in one iteration to accepted standards of the community. That's what negligence is. So—but we don't see folks trying to apply it in that way. And we certainly—it does not make sense to get mental health opinions such as was done in Mr. Bolling's case about whether or not— Your folks don't see it each way is your argument that there—in your view, there is wildly inconsistent application of the regulation at the RO level? Is that—that's your argument? That is one piece of it. So one of— Can I just ask on that? We haven't really talked about your lead argument about the record, and you're about to run into rebuttal. Why—you obviously think that this non-record material is significant to the evaluation of facial vagueness, or that's, in fact, your argument. So why would it not fit within the normal record and exhaustion rule to say, go to the fact forum to develop that evidence to get responses to the evidence, both criticism of your evidence and contrary evidence, even if the BVA could not say, and therefore, this is unconstitutional on its face? That falls into the futility exception. Why is developing a record on material that your own argument says is highly relevant to the ultimate disposition futile? Because the fundamental question is, is VA exhibiting a pattern of arbitrary decision-making? That's not a fact personal to Mr. Bolling. That's not a fact personal to Mr. Appling. And the VA cannot sit in judgment of itself as to whether it is being arbitrary. Well, the BVA is not going to rule on the issue anyhow, because— Exactly. They're not going to rule on it. Right, but haven't we already crossed that bridge in Ledford? No. Why didn't Ledford—Ledford says you present the claim to the BVA. Well, Ledford was a case where there was actual fact-finding within the realm of the board that was relevant to the determination. I understand that, but, I mean, the question—the argument was, clearly in the opinion, it says, you know, you should present your—even though there's futility, even though the BVA can't decide the merits of the challenge, constitutional challenge, make your record there. And didn't we just reiterate that in Wolf? So, I—Wolf, I think— I know the context is different, but I thought— Yeah, the context is different. I thought it expressly says, Ledger, whatever it is, and a few other cases, in fact, even if the agency can't invalidate the thing, if there are factual questions, you make the record there so that the next level, where invalidation is possible, will actually have the record. So, I think Eusebio is the case that's on point, which recognizes that the record— That's a very special circumstance, right, where basically on the shelf of the BVA examiners, of the BVA judges, is this congressionally mandated report. So, yeah, and the underserved report that we cite is on the shelf of the BVA. They were trained on it. That's not in the record, but I know that to be true. But ultimately, the question is, what is the purpose actually served, other than to frustrate veterans who use the American Legion as their rep, like Mr. Appling, or VFW as a rep, and say, sorry, you have an attorney. There is—the board can do nothing for you, but you have to start over, lose your effective date, take five years, put this in the record for the board to say, yep, sorry, we see it, but we're not going to do anything, and then come back to the court and be in the exact same position. What is served by that, other than to penalize the overwhelming majority of veterans who don't have attorneys to help them develop records for constitutional arguments, whose representatives know how to prove individual claims, but aren't going to submit this type of record evidence? You have just run out of all your time, but if—we'll give you the rebuttal time back, but we should hear from the other side now. Thank you, Your Honor. Thank you, Your Honor. May I please the court? As the court is aware, this is an appeal of a veterans court decision. There are essentially two topics of discussion. One relates to this issue of extra record evidence and how the veterans court dealt with it, and the arguments my friend on the other side now raises here on appeal for the first time. And the second issue relates to an attempt to facially invalidate, under the due process clause of the Constitution, a longstanding VA regulation. I noticed that the court's questions mostly centered on the due process question, so I'll focus my remarks on that issue first. Why don't you start with the record? Certainly, Your Honor. As to the extra record issue, my friend on the other side argues in favor of a broad, indiscriminate exemption to record-based limits for the veterans court when it comes to constitutional challenges to VA rules, laws, or regulations. Can I ask a question up front? Does court have any inherent authority to entertain information that doesn't satisfy judicial notice requirements under the federal rules or isn't a record below? The only two exceptions I'm aware of, and I'm not even sure they're separate exceptions, one is judicial notice, which I think is recognized. Yeah, I know that. The other might be Eusebio, which I think considered it constructive record evidence, although I think it might have discussed even that exception in the context of judicial notice. What popped into my mind when I was reading this was the so-called Brandeis briefs that were filed in the first Michigan law school affirmative action case, Grutter against Bollinger. And my recollection, which was proven by going back and looking at it, is that Justice O'Connor's opinion relied on, in making her decision, on amicus briefs that were filed in connection with that case. Non-record evidence. Right. I do think you see a lot of facial constitutional challenges dealing with some type of evidence in that context, like, for example, Brown v. Board of Education. Well, that's what I'm trying to get at. Yeah. We have a facial challenge here, right? Right. And I was just stunned when I went back and looked at Justice O'Connor's opinion, where it's just clear that she's relying on the numerous studies that were also made manifold amicus briefs were filed in that case. Right. And I do think that's sort of in a different context. Because it's the Supreme Court? Because it's in the amicus context. I suppose friends of the court can submit information for the courts, kind of secondary. I'm sorry. If the court's going to rely on the information, surely parties can, too. They're the only ones, except for the government, that gets to stand up and argue about this. Right. I think the one restriction, though, is statutory, right? So we're dealing with 7252B, which outlines what the Veterans Court can consider. And so that's what we're relying on. It's basically a codification of the record rule. Right. It is. Correct. So we're relying on that language to say that it limits the Veterans Court's review to what's in the record, subject to— I mean, as a matter of administrative law, if you didn't have it written in 7252, you'd be citing the APA. Congress has mandated that you are restricted to the record. Right. But in this case, we do have a specific statute promulgated through the VJRA that does expressly limit the Veterans Court's review to— Well, I just wondered whether there isn't some authority because there are due process considerations. If Justice O'Connor, for example, had gone out and solicited all this information in her own chambers and never given anybody a chance to look at it— Right. I think it's a fair— —and then relied on it, you'd have issues. I agree. I mean, it's a fair question. It's sort of an interesting question. I don't know that the court has to go that far. I think if we just kind of apply the text of the statute to this particular case, we get the result here, which is— Well, didn't the CAVC actually look at the subject information anyhow and conclude that it wasn't probative or— Yes, it did. So that's sort of weird because— Because that moved out all these legal— Right. So that kind of—it first said we're not going to take judicial notice of the information. Well, he's not arguing for judicial— Right. He's not arguing for judicial notice. So that's off the table. On the second hand, it did say, well, like, we don't also find it persuasive because we don't see the link to the argument— How are we supposed to review that? We don't even have this material. I agree. I mean, I don't think the court has to even get there, but I do think it kind of informs this idea. If my friend's argument on the other side is that it was so persuasive that it's going to change things below in this court order— We can't get at it at all? What happens if a judge at the CABC manufactures some evidence and puts it in and relies on it, and it's proven that the evidence is made up out of whole cloth? Does the bar on us looking at facts prohibit us from doing anything about that? Right. One question that sticks in my mind is whether that's an application of law to fact that's barred from review in this court or whether it's reviewed for abuse of discretion under typical appellate standards. I think we argued in our brief that it is application of law to fact barred from review. There is an argument to be made— Even on a constitutional question? I'm just squarely talking about the evidentiary issue, the extra record issue. But in the context of this case, this is a constitutional case, so we can review factual issues. So my understanding of that rule is that this court can do fact-finding, but it doesn't expand the record even in constitutional cases. Can we do fact-finding or can we review facts into whether or not there was substantial evidence or any basis for the fact? Right, and so I think that's the point I'm trying to make is this court is enabled— My understanding of the statute is that under 7292 subpart D, the court can go back to the record, which is already a defined universe pursuant to 7252, and review the record to do fact-finding on constitutional claims. But it can't basically jettison the record requirement to consider all sorts of extra record information. So that's the way I view that limitation in subpart D2. Even though the court is enabled to review constitutional claims, it doesn't get to redefine what the record is below. It's still circumscribed. The fact-finding is still circumscribed. But if in this case, if the CAVC had entertained on the merits the information that was being supplied that didn't satisfy judicial notice and they had relied on it in their decision, because it's a constitutional case, we would be able to assess the extent of their reliance and the reason for it on that data, correct? I think if the court were to declare that the judicial notice finding were improper, which again isn't being challenged here. Just assume for purpose of argument that judicial notice is off the table. Right. And then we get to the second question, because the Veterans Court did offer an opinion on the persuasiveness of the evidence. I was asking more in a hypothetical sense, because I'm saying to myself, what's the harm to their proposed rule, which is that CAVC ought to always allow this stuff in. Right. And he has a certain number of policy arguments because of veterans that don't have enough money to do this at the BVA, et cetera, et cetera. So I'm saying to myself, what's the problem if we let this evidence come in, require the CAVC to either accept it, reject it, use it, not use it? And then it comes up on appeal to us. We then can monitor the propriety of the use or misuse of that information by the CAVC. Right. I think the problems are twofold. Number one is statutory regarding the record rules, the record based limits ascribed by Congress. The second would be policy oriented. I'm not sure how much sense it makes to allow claimants to start introducing vast troves of extra record evidence at the Veterans Court appellate level and then having- They should wait until the case goes to the Supreme Court. I presume if we're talking about the amicus context, then yeah, the evidence could be submitted through an amicus or something like that. Take it out of the context of facial challenges and put it in as applied challenges. I'm sorry, I didn't hear the last part. I'm thinking in a global way about this problem. What happens if we consider the possibility of as applied challenges? I would think lots of veterans could, with the assistance of counsel, gin up some non-frivolous as applied arguments to how the VA functions with its regulations. I've been at it long enough and you as well know that. And so in time, we may see lots of as applied constitutional challenges. And you have the problem of the board can't do anything about it. The evidence has to come in somewhere. And in an applied case, you'd have all sorts of factual information different from typical information that goes in a claims case. Right. So I think what Judge Clevenger, you're getting at is if the information can come in in the as applied context, which I think makes more sense for an individual claims environment. Which probably makes more sense for somebody to bring in as applied challenge. So they are going to flood the BVA with this information, I guess, right? Right. But that is the position we would endorse, is that if you're going to preserve the argument, you have to populate the record evidence before you appeal before the Veterans Court. Now, I understand kind of the practical implications of, well, you know, the veteran. In the as applied situation, much of the information that would go into the database at the BVA is both pertinent to the merits of the claim. Correct. As well as to the merits of the constitutional claim. Correct. I think it would be. It could be dual nature. Correct. I think that's right. If the record was being developed in the BVA, is that an adversarial proceeding? So that if Mr. Ridgeway is before the BVA and he puts in these law reviews and this other material, is there somebody, let's call it the government, that is on the other side to say, here are all the reasons that this evidence doesn't mean what the veteran says it means? And here's contrary evidence? Or are we in the unusual situation where you're talking about having, going to a forum in which, aside from everything else, I mean, aside from the fact that they have fact-finding power, there's not actually an adversarial proceeding. Right. My understanding is that the board level, it's not adversarial. I understand that the veteran can hire an attorney or a veterans representative even at the board level. But it's still the duty to assist concept is still in play.  All that stuff. I think it still all comes into play. But a typical vagueness challenge has to start with it's vague as applied. Right. But that can be accompanied by vague on its face. Suppose the veteran to the BVA says, I'm making both arguments and on the facial part, I've got a bunch of the kind of evidence that the appellants here tried to submit to the veterans court. Is there a process before the BVA in which the BVA can say, I don't know, to the Justice Department, to the general counsel's office, to somebody in the Department of Veterans Affairs? There's a regulation under attack. Our record is being made. We think it's very important that the record be developed fully on the facial part. Right. So that when it goes to the veterans court, there's a record to evaluate this. Will somebody please, whoever has an interest in defending the regulation, take this on? That's a good question, Judge Toronto. I don't know. I don't know the answer to that. It's a fascinating question. I think probably what would happen is no. And I think what would happen at the next level, assuming that it did proceed to the next level, is that information could be populated on the record through a judicial notice type exception. But it would be public government data that meets federal rule of evidence 201 standards. So that's my understanding or my thinking of how that issue would be addressed. I don't know the precise answer to that specific question. I'm sorry, Judge Toronto. If there are no other questions on the extra record issue, we first of all think the argument is waived. This is not the argument that my friend on the other side raised below. I understand it's an interesting kind of statutory argument. Judge Toronto, as you mentioned, this futility argument was rejected in Wolfe. It was rejected in Ledford. We think that authorities. But I'm beginning to wonder whether the especially limited nature of the process in front of the BVA, namely there's no adversary, whether that makes it, I don't know, singularly inappropriate to say that that's the right place to develop a record with the usual full adversarial process. Because it doesn't exist. I understand that concern. You know, one thing that. Maybe it can exist, but you've put a pin saying not sure about that. Right. I'm not totally sure. I think one thing, though, is that, you know, we're still going back to our waiver argument, which is the argument wasn't raised below. But secondly, even if we're talking about that universe, I think it makes sense if you're bringing in as applied challenge where there is specific evidence in relation to your specific claim. And, you know, then you're bringing add on or follow on facial constitutional challenge. You don't run into kind of this environment of whether the individual claims environment is appropriate to adjudicate a facial constitutional challenge. But even then, I think, you know, what you would get if you brought that as applied challenge is you would get the, you know, the record populated with an understanding of how the regulation was applied as with respect to the individual. Well, what you'd get is a one sided population of the record. That's that would be odd. Well, you would get like an examiner's, you know, an examiner's notations about. I mean, for example, if we go to, you know, the record here with respect to bowling, you see. No, no, I'm only talking about the record that by assumption, Mr. Ridgeway thinks is relevant to the facial vagueness challenge, not the record that would be relevant to whether the particular circumstances of these individuals present a vagueness problem. Right. What what to make of the Ohio and versus Indiana difference that was talked about? And maybe there's statistics that when you look more broadly, turns out that that problem sort of the significance of that disparity dissolves. Who's going to go and find those other statistics? I think we're just talking about the population of the record issue. I do think at the veterans court level, though, you know, for example, let's use this case as an example. My friend on the other side tried to introduce a bevy of extra record evidence, saying that the data represented a thing. If it were on the record and it got to the veterans court, both sides could argue about what that data means, for example. And they wouldn't have to engage. I don't think the record building process is innately adversarial.  What can the adjudicator consider? And then once it's populated, both sides can reference that evidence. Now, if it needs to be supplemented through principles of judicial notice because, you know, some of the information or the accuracy of that information is questionable. Then I do think the government probably would add on information and say, you know, we can't trust these bar graphs. Well, Ledford and Woke, in essence, allow the veteran to put the thumb on the scale in the beginning by putting into the BVA whatever they want to put in. Right. And so that's in a way pro-veteran, lets them put in everything they think is pertinent. And then the pertinence of that information gets ventilated at the CAVC, which turns into a fact finder. Right. I mean, all we're doing is just building the record. Right. And what the claimant thinks, giving them kind of the opportunity to build what's relevant to developing this particular claim. And then once that universe is built, you know, the parties, when it does become adversarial, they argue based on it. I see I'm over my time. I'd just like to make one added statement, if that's OK. The one thing that I would add is that, you know, this idea of allowing the Veterans Court to entertain facial constitutional challenge in the first instance and consider a bevy of record information in the first instance, I think would create a lot of delays and potential backlogs in the system and how these cases are adjudicated. We think the statute governs the scenario. We respectfully request the court affirm the decision of the Veterans Court. Thank you. Thank you. I want to make three quick points in response. First, the CAVC did not give the evidence a proper way. They applied a judicial notice standard to say we cannot engage in speculation rather than applying the ordinary rule of we can draw reasonable inferences. Most cases are not smoking gun cases. I was a prosecutor in Chicago for five years. Most ordinary cases are built up of lots of little pieces that you have to put together on the side of the scale and weigh it against everything else. The CAVC didn't do that. They said, this, we cannot take judicial notice of anything except for... Are you now appealing the judicial notice point? So, our argument is... I mean, in your rebuttal, because in your brief you said that's not, you concede that that's not in the case. But, you know, our argument all along is... Judicial notice isn't the right framework. There's no waiver because we didn't have to come and ask permission for the court to take notice of this. If this were a two-step process where first we had to have permission through judicial notice, we didn't ask for it and that would be waived. Our argument is this is not a waiver case. And this isn't even like Eusebio. This is a very unique situation under the Constitution where the initial finding of fact belongs to the CAVC as to whether the agency engages in arbitrary decision-making based upon a statute that has no identifiable meaning. A ruling here doesn't even change Eusebio. In Eusebio, the question of whether or not Agent Orange causes hypertension, that's a question within the province of the board. And if you want to submit a lot of articles, you still have to submit them to the board because it is the board's job to find fact. Our argument is that the CAVC or the board cannot sit in judgment of itself. VA cannot sit in judgment of itself and have the CAVC give deference. So that brings me back to the record question. The record rule is not jurisdictional. It's a procedural rule. We know procedures can be waived when it doesn't make sense to apply them or they can just be not applied. And we know it doesn't make sense because none of the government's proposals make any sense. It can't be that the government has to come in and submit all of its contradictory evidence at the agency level in an adversarial proceeding. It can't be. Why can't that be? Because then it's an adversarial proceeding. First of all, there is no representative to do the work. And your understanding is you also think that the government somehow or other, the government couldn't do that? Couldn't do that at the agency level. The proper place to rebut the evidence is at the court level where the initial fact finding is done. They had the opportunity here and did not take advantage of it. They focused on reasons why the court shouldn't get to the merits. But even then, it still doesn't make sense to say, oh, the veterans have to submit everything first. They're not bound by the standards of judicial notice. They can submit any relevant evidence. And then you go to the veterans court where the government is restricted to judicial notice and the veterans have no opportunity to rebut the evidence submitted by the government, which they never saw at the agency level. Like, that can't possibly be the process either. None of that makes sense as a fair way to adjudicate claims. We're saying that the rational way is when the issue is not within the province of VA. Not within the province of VA, which is very rare. And I don't know of any situations other than constitutional ones where we're arguing that- Would expert analysis of the statistics play any role in evaluating the material? I think that it would be an ordinary piece of potentially relevant evidence that one could submit, but it is not a requirement. And if somebody submitted an expert analysis, the CAVC is going to put the expert on the witness stand? The CAVC doesn't have a process for considering things by witness, but the VA system generally is a system where things are adjudicated on the paper. Maybe it's not an ideal system, but again, it can't possibly be that we have an adversarial proceeding below in order to make a record. Because that is certainly not the system intended by Congress. And there's no mechanism even in place for the board to say, whoops, time out, this is an adversarial proceeding. I've got to call in a government attorney to litigate this and turn this into a trial where the service organization- To conclude here that the burden you have is a heavy one in which you have to demonstrate that the regulation is impermissibly vague in all its applications. What is it that you think that this extra record evidence can do to reach that level of a burden? First, I dispute the premise. We don't have to prove it's vague in all applications. I know, but if that is the standard, if we conclude that is the correct standard to apply here, because that's the standard that's been applied in other situations, then what is it about this extra record evidence that can establish that? So, I don't think it was the standard that was applied in Holmes or Wickett. Can we- I apologize. We're out of time. The evidence is that this language has no ordinary lay meaning. It has no ordinary technical medical meaning, as we've seen from the Grableman article, and how the VA itself has no training and the VA examiner have no way to make this connected to a medical standard. It has no ordinary legal standard. The primary data evidence shows inconsistency, and the secondary sources, such as Adams and Maltalto, who have looked at this have said they don't even attempt to apply this language from the regulation. What they do is they apply a criminal insanity standard because that's what they understand. So, in conclusion, Your Honors, we're not saying that everybody who put the uniform on is entitled to benefits. What we're saying is that Congress intended that people who are not responsible for their behavior get benefits, and every citizen is entitled to have questions like that decided under a standard that gives actual notice and does not delegate impermissible, subjective, ad hoc discretion to adjudicators, which is what all the evidence suggests is happening here. Thank you very much. Thank you. Thanks to both counsel. Case is submitted.